# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74802-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| KATHRYN ANNE ST. CLARE, | ) | PUBLISHED OPINION |
| Appellant | ) | FILED: March 27, 2017 |

SPEARMAN, J. — Kathryn Anne St. Clare appeals her conviction of ten counts of first degree cruelty to animals. She contends that the "to convict" instruction misstated and lowered the State's burden of proof. She also contends that the trial court committed reversible error in failing to give a unanimity instruction. Finding no error, we affirm.

## FACTS

In the spring and summer of 2014, Snohomish County animal control officers responded to reports that animals were confined in inhumane conditions in a trailer belonging to St. Clare. The officers visited several times and observed conditions from outside the trailer. It was evident that St. Clare kept numerous cats in the trailer and when St. Clare was not home the cats were locked inside. On some visits, conditions appeared adequate and the cats did not seem

distressed. On other visits, more cats were visible, they appeared ill and distressed, and conditions appeared unsanitary.

Animal control officers searched the trailer pursuant to a warrant on July 11, 2014. They found 111 cats. The condition of individual cats varied, but as a group, the cats were malnourished and dehydrated. Many of the cats had lost hair and teeth. The feline leukemia virus, which is highly contagious, appeared to have spread throughout the group. After examination, a veterinarian made the decision to euthanize all of the cats.

St. Clare was charged with ten counts of first degree cruelty to animals under RCW 16.52.205(2), each count based on a separate cat. At trial, the State's witnesses testified to the condition of the cats. Linda Beilfus, a neighbor who had reported the trailer to animal control, testified that when she visited in early July the trailer was parked in the sun. Through the windows, she could see many cats confined inside. The cats were panting, listless, and appeared to be starving. No food or water was visible.

An animal control officer, Angela Rench, testified that when she contacted St. Clare in June, there were 40 to 60 cats inside the trailer. The cats were lethargic and many were emaciated. The trailer was parked in the sun. It appeared that the cats had no food or water.

Rench and other animal control officers testified to the search of the trailer on July 11. The officers stated that the trailer was very hot, it smelled overwhelmingly of cat urine, and the floor was covered in feces. The cats were

panting and lethargic. There was no food or water in the trailer. The officers made a video recording of the search. The officers testified that they impounded the trailer and transported it to an animal shelter. At the shelter, the officers removed the cats one by one for examination by a veterinarian.

The veterinarian, Lisa Thompson, testified that she examined each of the 111 cats. The cats were malnourished and dehydrated to varying degrees. Thompson stated that the number of underweight cats in the group indicated that adequate food had not been provided. She testified that the number of dehydrated cats indicated that the cats either had no access to water for a significant period of time or only received water intermittently. Thompson also testified to the conditions of the individual cats listed in the charges. Photos of the individual cats and the video from the search of the trailer were admitted into evidence.

The jury convicted St. Clare as charged. She appeals.

## DISCUSSION

St. Clare asserts that the trial court erred because the "to convict" instruction was inadequate. The State contends that the instruction accurately states the law and that St. Clare may not challenge the instruction for the first time on appeal.

Jury instructions are generally adequate if, when read as a whole, they "'properly inform the jury of the applicable law.'" State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005) (quoting State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d

550 (2002)). The adequacy of instructions is a question of law that this court reviews de novo. Id. (citing State v. DeRyke, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003)). Because the State has the burden of proving each element of the crime charged, an adequate "to convict" instruction must state each element of the crime. State v. Fisher, 165 Wn.2d 727, 753, 202 P.3d 937 (2009) (citing Mills, 154 Wn.2d at 7). The elements of the crime usually consist of the actus reus, mens rea, and causation. Id. at 754. (citing BLACKS LAW DICTIONARY 559 (8th ed.2004)).

In general, a party may not raise an error for the first time on appeal. RAP 2.5(a). The policy underlying this rule is to encourage the parties to point out, at trial, errors that the trial court may correct. State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (citing State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). An exception exists for manifest errors that affect a constitutional right. RAP 2.5(a)(3). To meet this exception, the appellant must show that the claim "implicates a constitutional interest as compared to another form of trial error." O'Hara, 167 Wn.2d at 98. Courts have found error affecting a constitutional right where the "to convict" instruction shifts the burden of proof to the defendant or omits an element of the crime charged. Id. at 100-01 (citations omitted). To raise such a claim for the first time on appeal, the appellant must also demonstrate that the error resulted in actual prejudice. Id. at 99 (citing State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

In this case, St. Clare was charged with first degree cruelty to animals under RCW 16.52.205(2). As relevant here, a person is guilty of that crime when "he or she, with criminal negligence, starves, dehydrates, or suffocates an animal and as a result causes: (a) Substantial and unjustifiable physical pain that extends for a period sufficient to cause considerable suffering; ..." RCW 16.52.205(2).

At trial, the State proposed jury instructions, including a "to convict" instruction and an instruction defining criminal negligence. The trial court adopted these with minor changes. St. Clare did not object to the instructions.

The court instructed the jury that:

> To convict the defendant of the crime of animal cruelty in the first degree, as charged in [counts one through ten], each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That the defendant acted by one or more of the following means or methods:
>   a. That [during the specific period of time], the defendant starved [a particular cat];
>   b. That [during the specific period of time], the defendant dehydrated [a particular cat];
> (2) The defendant acted with criminal negligence;
> (3) As a result, the animal suffered substantial and unjustifiable physical pain that extended for a period sufficient to cause considerable suffering; and
> (4) That the acts occurred in the State of Washington.
>
> If you find from the evidence that elements (2), (3), and (4), and either of alternative elements (1)(a) or (1)(b), have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (1)(a) or (1)(b) has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt.

Clerk's Papers (CP) at 77-78.

St. Clare contends that the "to convict" instruction misstated and lowered the State's burden of proof. She also appears to assert that the "to convict" instruction omitted an element of the crime charged. These arguments are without merit.

The "to convict" instruction states three times that the jury may only convict if it finds that the State proved each element beyond a reasonable doubt. The instruction does not misstate or lower the State's burden of proof. The instruction sets out four numbered elements stating the specific act that must be proven, the state of mind, the result of the act on the animals, and the location. The instruction does not omit any element of the crime.

However, St. Clare asserts that an inquiry from the jury demonstrates that the instruction was confusing and failed to adequately convey the law. During deliberations, the jury submitted an inquiry concerning the "to convict" instruction. The jury referred to parts (1)(a) and (1)(b), where it states that the defendant starved or dehydrated an animal, and asked: "Does the way these are worded imply intent by the defendant?" CP at 67. After discussion with the parties, the court responded that the referenced instructions "define the elements of each crime which must be proven." CP at 67.

St. Clare contends that the phrasing of the "to convict" instruction failed to make clear the required mental state that applied to the act of starving or dehydrating an animal. She argues that the jury may have found that she was criminally negligent by some other act, and the State thus did not have to prove

6

that she acted negligently by starving or dehydrating the animals. We reject this argument.

The instruction informed the jury that, to convict St. Clare, it had to find that she starved or dehydrated the cats and that she acted with criminal negligence. Although the inquiry gives evidence that the jury may have been unsure of the mental state that attached to starving or dehydrating the cats, any confusion heightened, rather than lowered, the State's burden of proof. If the jury mistakenly believed that the first element implied intent, it found that St. Clare starved or dehydrated the animals intentionally, rather than with criminal negligence. St. Clare's argument that the jury may have found that she was criminally negligent by some other act is speculative and unsupported by any citation to the record. Moreover, even if the jury had made such a finding, it would have been irrelevant, because it was in addition to finding that St. Clare had starved or dehydrated the cats.

We reject St. Clare's challenge to the "to convict" instruction. The instruction includes each statutory element and correctly states the burden of proof. If the phrasing was confusing, that confusion could have been corrected through objection at trial. And because any possible misunderstanding of the instruction only heightened the State's burden of proof, St. Clare fails to show prejudice from the alleged error.

St. Clare next argues that the trial court erred when it failed to instruct the jury on unanimity. Relying on State v. Peterson, 174 Wn. App. 828, 851, 301 P.3d 1060 (2013), St. Clare argues that first degree animal cruelty is an

alternative means crime that may be committed either by starving, dehydrating or suffocating an animal.[1] St. Clare correctly points out that where a crime may be committed by alternative means and the evidence is not sufficient as to each of those means, a defendant has a right to "jury unanimity on the means by which the defendant is found to have committed the crime." State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2s 231 (1994) (citing State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980)). She also concedes, as she must, that if the evidence is sufficient to support each of the alternative means submitted to the jury, no particularized expression of unanimity is required because "we infer that the jury rested its decision on a unanimous finding as to the means." Id. at 708 (citing State v. Whitney, 108 Wn.2d 506, 739 P.2d 1150 (1987)).

St. Clare was convicted of ten counts of cruelty to animals in the first degree. She asserts that, in seven of the ten charges, the evidence was insufficient as to one of the alternative means. She therefore contends that she was entitled to an expression of jury unanimity as to the means by which she committed the crime and the trial court's failure to instruct the jury on unanimity was reversible error. But because we disagree that the evidence is insufficient as to each of the means by which St. Clare is alleged to have committed the crimes, we reject her argument.

Evidence is sufficient to support a criminal conviction if, viewing the evidence in the light most favorable to the State, a rational fact finder could have

---

[1] The State asks us to reconsider our holding in Peterson that RCW 16.52.205(2) creates alternative means of committing first degree animal cruelty. But in light of our disposition of this case, we need not address that issue.

8

found the essential elements of the offense beyond a reasonable doubt. Green, 94 Wn.2d at 221. To convict St. Clare, the jury had to find beyond a reasonable doubt that, acting with criminal negligence, she starved or dehydrated a particular cat and thereby caused the cat to suffer "[s]ubstantial and unjustifiable physical pain that extends for a period sufficient to cause considerable suffering." RCW 16.52.205(2). Whether an animal has suffered unjustifiably due to dehydration or starvation is a matter of "ordinary experience which the jury could determine without the aid of expert testimony. . . ." Peterson, 174 Wn. App. at 855.

St. Clare contends that there was insufficient evidence to support the alternative means of dehydration as to two of the charged cats, identified as cats 6 and 9. She asserts that the State failed to produce evidence that these specific cats were in a dehydrated state. We disagree because, from the evidence in the record, a reasonable juror could have concluded that the cats suffered unjustifiably from a lack of water.

The veterinarian, Thompson, testified that cats 6 and 9 were emaciated. She did not testify as to the level of hydration of these two cats. But, speaking of the cats as a group, Thompson stated that many of the cats were noticeably dehydrated. She testified that, to account for the number of dehydrated cats in the group, the cats either had no access to water for a significant period of time or they only received water intermittently. Thompson stated that the heat and the high level of ammonia in the trailer would both have exacerbated the cats' need for water.

Beilfus and Rench also testified to the cats' lack of water. Beilfus stated that the cats were confined to the trailer on a hot day, there was no water visible, and the cats were panting. Rench testified that, during a June visit, the trailer was parked in the sun, the cats were confined to the trailer with no water, and the cats were listless. Rench stated that when she searched the trailer in July, the trailer was extremely hot, the cats had no water, and the cats were lethargic and panting. The jury viewed the video of the July search.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found that St. Clare acted with criminal negligence in dehydrating the cats, resulting in substantial and unjustifiable pain that caused considerable suffering.

St. Clare also argues that there was insufficient evidence to support starvation as to cats 13, 17, 26, 55, and 81. She asserts that Thompson's testimony establishes that these cats were only slightly underweight, not starving.

Thompson described the cats' body condition using a score from one to nine, with five representing a healthy weight. A body condition score of one indicates severe emaciation, while a score of nine indicates obesity. Thompson also evaluated the cats using a muscle condition score of one to three, with three representing average muscle condition. She stated that an animal that receives inadequate food breaks down muscle proteins to stay alive, suggesting a correlation between poor muscle condition and inadequate nutrition.

Thompson testified that cats 13, 17, 26, 55, and 81 each had a body condition score of 4 and a muscle condition score of 2, indicating that they were

10

mildly underweight and had poor muscle mass. Considering the number of underweight cats in the entire group, Thompson stated that adequate food had not been provided. Beilfus described the cats as "starving" and stated that, when she visited the trailer, the cats had no food. Rench testified that, on her June and July visits, no food was visible and the cats appeared emaciated. Rench and other animal control officers stated that, when they searched the trailer in July, the cats had no food. The jury viewed photos of the individual cats charged.

From this evidence, a reasonable juror could have found that cats 13, 17, 26, 55, and 81 experienced considerable suffering due to lack of food. We conclude that, regardless of whether RCW 16.52.205(2) establishes starvation and dehydration as alternative means, the evidence was sufficient to support St. Clare's conviction.

St. Clare next asks that we decline to award costs of appeal to the State. Appellate costs are awarded to the prevailing party unless this court directs otherwise or "unless the commissioner or clerk determines an adult offender does not have the current or likely future ability to pay such costs." RAP 14.2. Where an offender has been found indigent by the trial court, that finding of indigency remains in effect,... "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

St. Clare was found indigent by the trial court. If the State has evidence indicating that her financial circumstances have significantly improved since the

trial court's finding, it may file a motion for costs with the commissioner. We decline to rule on the issue of costs.

St. Clare raises further arguments in a statement of additional grounds. She contends that animal control officers were at least partly responsible for the cats' dehydration because they did not provide the animals water and kept the animals confined in the hot trailer until they were examined by the veterinarian. St. Clare thus appears to challenge the sufficiency of the evidence supporting the conclusion that she dehydrated the cats. Because this argument was raised by counsel, we decline to consider it again.

Finally, St. Clare asserts that the veterinarian did not euthanize the cats because they were starving or dehydrated but because the shelter lacked adequate resources to care for the cats. We decline to reach this argument because it is immaterial to St. Clare's conviction.

Affirmed.

WE CONCUR:

Spearman, J.

Trickey, ACJ

*State v. St. Clare, No. 74802-5-I*

Dwyer, J. (concurring) — I agree that the judgment should be affirmed. I also agree that the crime of animal cruelty in the first degree is an alternative means crime. However, because this court, in State v. Peterson, 174 Wn. App. 828, 301 P.3d 1060 (2013), misidentified the means by which the crime can be committed, and because the majority opinion perpetuates the error, I find it necessary to decline to join the majority opinion.

In its entirety, former RCW 16.52.205 (2006)[1] reads:

> *(1) A person is guilty of animal cruelty in the first degree when,* except as authorized in law, he or she intentionally (a) inflicts substantial pain on, (b) causes physical injury to, or (c) kills an animal by a means causing undue suffering, or forces a minor to inflict unnecessary pain, injury, or death on an animal.
> *(2) A person is guilty of animal cruelty in the first degree when,* except as authorized by law, he or she, with criminal negligence, starves, dehydrates, or suffocates an animal and as a result causes: (a) Substantial and unjustifiable physical pain that extends for a period sufficient to cause considerable suffering; or (b) death.
> *(3) A person is guilty of animal cruelty in the first degree when* he or she:
> (a) Knowingly engages in any sexual conduct or sexual contact with an animal;
> (b) Knowingly causes, aids, or abets another person to engage in any sexual conduct or sexual contact with an animal;
> (c) Knowingly permits any sexual conduct or sexual contact with an animal to be conducted on any premises under his or her charge or control;
> (d) Knowingly engages in, organizes, promotes, conducts, advertises, aids, abets, participates in as an observer, or performs any service in the furtherance of an act involving any sexual

---

[1] The quoted section is the wording of RCW 16.52.205 that was in effect at the time of the offense. The section was amended in 2015. That amendment made no change of consequence to the quoted language.

conduct or sexual contact with an animal for a commercial or recreational purpose; or

(e) Knowingly photographs or films, for purposes of sexual gratification, a person engaged in a sexual act or sexual contact with an animal.

(4) Animal cruelty in the first degree is a class C felony.

(5) In addition to the penalty imposed in subsection (4) of this section, the court may order that the convicted person do any of the following:

(a) Not harbor or own animals or reside in any household where animals are present;

(b) Participate in appropriate counseling at the defendant's expense;

(c) Reimburse the animal shelter or humane society for any reasonable costs incurred for the care and maintenance of any animals taken to the animal shelter or humane society as a result of conduct proscribed in subsection (3) of this section.

(6) Nothing in this section may be considered to prohibit accepted animal husbandry practices or accepted veterinary medical practices by a licensed veterinarian or certified veterinary technician.

(7) If the court has reasonable grounds to believe that a violation of this section has occurred, the court may order the seizure of all animals involved in the alleged violation as a condition of bond of a person charged with a violation.

(8) For purposes of this section:

(a) "Animal" means every creature, either alive or dead, other than a human being.

(b) "Sexual conduct" means any touching or fondling by a person, either directly or through clothing, of the sex organs or anus of an animal or any transfer or transmission of semen by the person upon any part of the animal, for the purpose of sexual gratification or arousal of the person.

(c) "Sexual contact" means any contact, however slight, between the mouth, sex organ, or anus of a person and the sex organ or anus of an animal, or any intrusion, however slight, of any part of the body of the person into the sex organ or anus of an animal, or any intrusion of the sex organ or anus of the person into the mouth of the animal, for the purpose of sexual gratification or arousal of the person.

(d) "Photographs" or "films" means the making of a photograph, motion picture film, videotape, digital image, or any other recording, sale, or transmission of the image.

2

(Emphasis added.)

This section sets forth a complete statement of the crime of animal cruelty in the first degree. It also unquestionably provides that the offense is one that may be committed by alternative means. But what are those means?

Case law is helpful to making this determination.

> Alternative means crimes are ones that provide that the proscribed criminal conduct may be proved in a variety of ways. As a general rule, such crimes are set forth in a statute stating a single offense, under which are set forth more than one means by which the offense may be committed.

State v. Smith, 159 Wn.2d 778, 784, 154 P.3d 873 (2007).

This analysis has a logical limitation.

> [A] defendant may not simply point to an instruction or statute that is phrased in the disjunctive in order to trigger a substantial evidence review of her conviction. Likewise, where a disputed instruction involves alternatives that may be characterized as a "'means within [a] means,'" the constitutional right to a unanimous jury verdict is not implicated and the alternative means doctrine does not apply. In re Pers. Restraint of Jeffries, 110 Wn.2d 326, 339, 752 P.2d 1338 (1988) (refusing to accept defendant's claim that the jury should be additionally instructed on the subalternatives of the statutory alternatives at issue).

Smith, 159 Wn.2d at 783. To be clear, "a 'means within a means' scenario does not trigger jury unanimity protections." Smith, 159 Wn.2d at 787.

The alternative means of committing the crime of animal cruelty in the first degree are three in number. They are set out in subsections 1, 2, and 3 of former RCW 16.52.205. Each of these subsections begins with the words, "A person is guilty of animal cruelty in the first degree when . . . ." In each subsection, thereafter follows the words describing the means set forth therein.

3

The error made in <u>Peterson</u> is that the court confused certain subalternatives ("means within a means") for actual alternative means. The words set forth in subsection 2 ("starves, dehydrates, or suffocates") are "means within a means." The jury unanimity guarantee does not attach to these subalternatives.

Subsection 1, viewed broadly, criminalizes torturing animals. Subsection 2, viewed broadly, criminalizes withholding life's necessities (air, food, water) from animals. Subsection 3 criminalizes sexual perversion with animals. These are the alternative means.

This court, in <u>Peterson</u>, got it wrong. The majority opinion perpetuates the error.

But a unanimous jury convicted the defendant based on the single means alleged—a violation of former RCW 16.52.205(2). Therefore, I concur in affirming the judgment.

4