IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>       v.<br><br>AMJAD PERVEZ,<br><br>               Appellant. | DIVISION ONE<br><br>No. 80426-0-I<br><br>UNPUBLISHED OPINION |

LEACH, J. — Amjad Pervez appeals a judgment and sentence entered after he pleaded guilty to three counts of child molestation committed against his biological daughter K.P. Pervez challenges the trial court's denial of his request for a Special Sex Offender Sentencing Alternative (SSOSA). He notes the court gave "great weight" to K.P.'s opinion about his request but did not recognize that his wife, K.P.'s mother, was also a "victim" under the SSOSA statute RCW 9.94A.670 and that the court did not give her opinion "great weight". He argues to the extent his trial counsel did not assert his wife was a "victim," his counsel provided ineffective assistance. But, Pervez appears to have invited this error by representing to the trial court that K.P. was the only victim. In any event, we affirm the trial court's denial of his request for a SSOSA because his wife is not a "victim" under the SSOSA statute. Pervez also argues, and the State concedes, the trial court erred in imposing community custody supervision fees. We accept the

Citations and pincites are based on the Westlaw online version of the cited material.

State's concession and remand to strike the supervision fees.

FACTS

The State charged Pervez with two counts of first degree child molestation and one count second degree child molestation committed against his biological daughter K.P. between February 2003 and January 2005 when she was 10 to 13 years old. Each count of first degree child molestation carries the standard range and maximum term of life imprisonment and second degree child molestation carries 57 to 75 months.

Pervez pleaded guilty as charged. As part of the guilty plea agreement, he stipulated for sentencing purposes that the certification for determination of probable cause set forth "real and material facts."

According to this certification, Pervez began sexually abusing his daughter K.P. when she was 10 years old. He inappropriately touched K.P. every weekend and "almost every day." He would rub K.P.'s vagina and breasts, "finger" her vagina, make her touch his penis, rub his penis on her buttocks, and shave her public hair. He would touch K.P.'s genitalia when she was laying in her bed while her mother (Pervez's wife) was sleeping in another bed in the same room. He would touch K.P.'s "boobs and nipples" under her shirt while under a blanket when her mother was sitting next to them. The abuse continued until K.P. entered seventh grade. K.P. believed her mother knew about the abuse. But, the mother denied anything ever happened to K.P. K.P. asked her mother for help, but "it didn't work."

The plea agreement allowed Pervez to request a SSOSA but noted "the

2

State opposes the imposition of a SSOSA." Before sentencing, Pervez filed a pre-sentence report and request for a SSOSA. He attached a copy of the psychosexual evaluation conducted by Dr. Mark Whitehill, Ph.D., and letters of support from his friends, sister-in-law, and former employer. For purposes of a SSOSA, Pervez asserted he "has no other victims, as documented by polygraph examination." One of his friends stated that Pervez's wife had difficulty walking and needed Pervez's daily assistance. Pervez's sister-in-law stated Pervez was the only breadwinner for his family. In his psychosexual evaluation, Dr. Whitehill noted Pervez had been in "absolute denial" of any sexual misconduct and accepted responsibility only after realizing Dr. Whitehill would not recommend a SSOSA otherwise. Pervez also minimized his conduct. Dr. Whitehill provisionally endorsed Pervez's amenability to treatment with conditions to assess the durability of his "new-found" acceptance of responsibility.

At sentencing, the State recommended a mid-range sentence of 110 months. K.P., then 26 years old, addressed the court through a victim's advocate. K.P. explained how Pervez's abuse impacted and continued to impact her life causing her trauma, post-traumatic stress disorder, anxiety, grief, suffering, and "eternal pain." She stated her life was full of anger and lashing out on loved ones, and she had difficulty trusting others. The "only support" she received was from her sister, cousin, and friends. Through therapy, she was able to cry about and accept Pervez's assaults after years of "suppressing everything" and self-doubt. It would take her a lifetime to heal, and even then, what she had suffered would "never go away." K.P. opposed a SSOSA. She explained:

3

I don't wish for him to be granted SSOSA because treatment is too far gone for him. When I confronted him about the assault, he was not apologetic and has not shown any sign of remorse. Instead he continued to molest other children in the family, and outside as well.

Knowing him for my entire life, I believe he tries to take the easiest way out to save himself. He is extremely selfish. He does not wish to better himself in any way, and so the treatment will not be beneficial for him, other than reducing his sentence time, reducing his accountability. He deserves consequences for what he has done to me and other children who have to live with his acts.

Pervez argued he was 60 years old, so a mid-range sentence would "push him well into his 70's." He argued a SSOSA sentence would allow him to work, attend treatment, and "continue to be a caregiver for his wife who has trouble even walking without him." He argued he was a good SSOSA candidate because he had no criminal record and posed a low recidivism risk due to his age. The State opposed a SSOSA "based on the evaluation, based on the nature of the charges, and the pervasiveness in how long they went on." The State also pointed out K.P.'s opposition. The court denied Pervez's motion for a SSOSA, while noting it was a "very difficult decision." The court explained:

I am a believer in treatment, however the State law requires me to give great weight to the victim's opinion in this particular situation. The victim in this case is a young adult who has set out strong reasons for why she feels that her father would not be amenable to this type of dispositional alternative. I don't have to follow her input, but if I do not choose to, I must find a reason not to. And sadly, I don't find reasons to impose this treatment alternative.

The recommendation of the evaluator is lukewarm, at best. He talks about Mr. Pervez having provisional amenability to treatment. Mr. Perez initially did not admit, and now - - even now, minimizes his actions. I am sorry for his wife, who appears to want him in the community. But if the victim in the case is aware that her dad is in her mother's home as a caregiver, she will be on constant eggshells wondering if she can contact her mother, or go to her

4

home. And the tie needs to go to her, and her ability to be in the community without always having that concern.

The court imposed "the minimum sentence in the lowest amount" in light of Pervez's age. Pervez appeals the trial court's denial of his SSOSA request.

ANALYSIS

Denial of SSOSA

Pervez challenges the trial court's failure to give "great weight" to his wife's opinion when denying him a SSOSA. He argues his wife is also a "victim" whose opinion must be given "great weight" under the SSOSA statute. While a defendant generally cannot appeal a standard range sentence, he may challenge "the trial court's interpretation of the SSOSA statutes."[1] Pervez argues illegal or erroneous sentences may be challenged for the first time on appeal.[2]

When Prevez asked for a SSOSA, he represented to the trial court he "has no other victims." So, it appears he invited the alleged error.[3] And, Pervez did not provide any letter or opinion from his wife. Nothing in the record shows what her opinion was, but the trial court appears to have assumed her view based on Pervez's counsel's assertion that she wished a SSOSA for her husband. Regardless, we reach the merits of Pervez's argument and hold his wife is not a "victim" under the SSOSA statute.

A SSOSA is a special procedure authorized by the Sentencing Reform Act

---

[1] State v. Adamy, 151 Wn. App. 583, 587, 213 P.3d 627 (2009).

[2] State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008) (quoting State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)).

[3] The State does not address the invited error and instead addresses the merits of Pervez's argument.

5

(SRA) of 1981. It allows a sentencing judge to suspend a sex offender's felony sentence if the offender meets certain eligibility criteria defined in RCW 9.94A.670.[4] The State did not dispute Pervez met the eligibility criteria.

"The grant of a SSOSA sentence is entirely at a trial court's discretion, so long as the court does not abuse its discretion by denying a SSOSA on an impermissible basis."[5] A trial court abuses its discretion when it reaches a decision by applying an incorrect legal standard.[6] Interpretation of the SSOSA statute is a question of law we review de novo.[7] When we interpret a statute, our goal is to carry out the legislature's intent.[8] We first examine the statute's plain language, which we discern from the ordinary meaning of the language at issue, the context of the statute containing that provision, related provisions, and the statutory scheme as a whole.[9] If the statute's plain language is unambiguous, and is not susceptible to more than one reasonable interpretation, our inquiry ends.[10] Neither party appears to assert the definition of "victim" in the SSOSA statute is ambiguous. RCW 9.94A.670(1)(c).[11]

The SSOSA statute lists several factors the sentencing court "shall

---

[4] State v. Sims, 171 Wn.2d 436, 256 P.3d 285 (2011).
[5] Sims, 171 Wn.2d at 445.
[6] Adamy, 151 Wn. App. at 587.
[7] State v. Pratt, 11 Wn. App.2d 450, 456, 454 P.3d 875 (2019).
[8] State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010).
[9] Gonzalez, 168 Wn.2d at 263.
[10] Gonzalez, 168 Wn.2d at 263.
[11] In his reply brief, Pervez notes in passing that if the statute is ambiguous, and the ambiguity cannot be resolved, the rule of lenity requires an interpretation in his favor. To the extent Pervez suggests the rule of lenity applies, his argument raised for the first time in a reply brief is too late for consideration. Cowiche Canyon Conservancy v. Bosley, 118 W.2d 801, 809, 828 P.2d 549 (1992).

consider" including "the victim's opinion".

> After receipt of the reports, the court shall consider whether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section.[12]

The statute directs the court to give "great weight to the victim's opinion."[13]  If the court imposes a SSOSA contrary to the victim's opinion, "the court shall enter written findings stating its reasons for imposing the treatment disposition."[14]  No similar findings are required if the court declines to grant a SSOSA.

> RCW 9.94A.670(1)(c) provides two definitions of "victim":

> "Victim" means any person who has sustained emotional, psychological, physical, or financial injury to person or property as a result of the crime charged.  "Victim" also means a parent or guardian of a victim who is a minor child unless the parent or guardian is the perpetrator of the offense.

Pervez argues his wife is a "victim" under both definitions.  For the first definition, he claims his wife is "most certainly sustained emotional and psychological injury as a result of the crimes charged against her husband." He argues, because his wife is dependent on his income and caregiving, she sustained financial and arguably physical injury as a result of his crimes.  For the second definition, he argues his wife is a victim because she is a parent of K.P. who was a minor child

---

[12] RCW 9.94A.670(4).
[13] RCW 9.94A.670(4).
[14] RCW 9.94A.670(4).

when he committed the crimes. We disagree. Pervez's wife is not a "victim" under either definition.

For the first definition, Pervez conflates harm caused by his crime with the collateral consequences of his conviction. Pervez cites no evidence in the record showing his wife sustained any emotional or psychological injury as a result of his child molestation crimes.[15] And, he does not show his wife sustained any physical or financial injury as a result of his crimes. At most, he asserts financial and other difficulties experienced by his wife as a result of his incarceration. Under his interpretation, taken to its logical conclusion, Pervez would also be a "victim" because he most certainly sustained emotional, psychological, physical, or financial injury as a result of his incarceration. We reject his interpretation because it is not reasonable and would lead to absurd results.[16]

Pervez argues the SRA's more general definition of "victim," unlike the SSOSA statute, uses the word "direct." Under the SRA general definition, "victim" is "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged."[17] Citing State v. Sweat, Pervez argues in "some contexts, the Legislature requires a broader definition."[18] But, he cites to no authority to support his argument that the consequences of a defendant's incarceration should be considered a result of the defendant's crime for purposes of a SSOSA. Sweat involved consideration of a

---

[15] State v. St. Clare, 198 Wn. App. 371, 378, 393 P.3d 836 (2017).
[16] State v. Larson, 184 Wn.2d 843, 851, 365 P.3d 740 (2015).
[17] RCW 9.94A.030(54).
[18] 180 Wn.2d 156, 322 P.3d 1213 (2014).

defendant's multiple domestic violence victims and not just the victim of his currently charged offense for purposes of applying a statutory aggravating factor. Our Supreme Court relied on language, "[u]nless the context clearly requires otherwise," to hold that the SRA "victim" definition did not apply because the enhancement statute, RCW 9.94A.535(3)(h), indicated the legislature's intent for the court to consider any prior domestic violence incidents in establishing a pattern of conduct.[19] Sweat is inapposite and does not support Pervez's argument.

The State cites this court's opinion in State v. Landsiedel as supporting its position.[20] Pervez argues Landsiedel is distinguishable. There, a defendant was convicted of attempted second degree child rape after arranging to meet an undercover officer posing as a 13-year-old girl for a "pretend" rape on the internet. So, the crime had no "victim" in the traditional sense. One of the SSOSA eligibility criteria requires the "offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime."[21] The defendant argued his wife was a "victim" because she suffered emotional or psychological harm as a result of his crime.[22] This court rejected his interpretation as rendering the eligibility criterion meaningless.

> SSOSA is a sentencing alternative. The limitations make clear it was not intended to be available to everyone. Yet, Landsiedel's literal application of the term "victim" in subsection (e) would allow SSOSA eligibility where anyone with whom the defendant has a prior

---

[19] Sweat, 180 Wn.2d at 160-63.
[20] 165 Wn. App. 886, 893, 269 P.3d 347 (2012).
[21] RCW 9.94A.670(2)(e).
[22] Unlike Pervez's wife who did not testify or present any opinion at sentencing, Landsiedel's wife testified about her emotional harm. There was no dispute she sustained emotional or psychological injury as a result of the defendant's crime.

9

relationship has suffered emotional or psychological injury as a result of the crime. The State argues this would be an expansion of eligibility, certainly beyond what has been observed in practice. We agree. Under Landsiedel's theory it is hard to conceive of any defendant who would not have a relationship with someone who could satisfy the literal definition of "victim," despite having no relationship with the person against whom the charged crime was actually perpetrated. In essence, his interpretation renders the limitation in subsection (e) meaningless, not a limitation at all.[23]

Although Landsiedel addressed the defendant's SSOSA eligibility, not at issue here, this court did interpret the first definition of "victim" to reject the defendant's claim that his wife was a "victim". Pervez's interpretation is similarly unreasonable and would lead to absurd results as discussed above.

For the second definition, in order for Pervez's wife to be a "victim", she must be "a parent…of a victim who is a minor child."[24] The State argues Pervez's wife is not a "victim" under this definition because K.P. was 26 years old and was not a minor child when she opposed Pervez's SSOSA request. Pervez argues K.P.'s status should be determined at the time of his crimes. We agree with the State.

The SSOSA statute uses the present tense "is", as opposed to "was", indicating the victim must be a minor at the time of the trial court's consideration of a SSOSA. The word "is" contemplates a present status.[25] Also, the second definition does not require that the crime caused the parent any harm. This strongly suggests the individual described in the second definition acts as a

---

[23] Landsiedel, 165 Wn. App. at 892-93.
[24] RCW 9.94A.670(1)(c).
[25] State v. Saint-Louis, 188 Wn. App. 905, 917, 355 P.3d 345 (2015); Kaplan v. Northwestern Mut. Life Ins. Co., 115 Wn. App. 791, 806-809, 65 P.3d 16 (2003); Sherwin v. Arveson, 96 Wn.2d 77, 83, 633 P.2d 1335 (1981).

representative of a minor child unable to present their own views. This representative is not needed for a person who is not a minor at the time the court hears the victim's views. This time is at sentencing and not when the defendant committed the crime.

Pervez relies on this court's opinion in State v. Coucil as supporting his argument that the word "is" refers to K.P.'s status at the time of his crimes.[26] His reliance is misplaced. In Coucil, this court interpreted a former bail jumping statute to conclude the statute classified the seriousness of the crime according to when it occurs and not at sentencing.[27] The statute provided as follows:

> (1)    Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.
>
> ....
>
> (3)    Bail jumping is:
>
> (a)    A class A felony if the person was held for, charged with, or convicted of murder in the first degree;
>
> (b)    A class B felony if the person was held for, charged with, or convicted of a class A felony other than murder in the first degree;
>
> (c)    A class C felony if the person was held for, charged with, or convicted of a class B or class C felony;
>
> (d)    A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.[28]

---

[26] 151 Wn. App. 131, 210 P.3d 1058 (2009), aff'd 170 Wn.2d 704, 707-709, 245 P.3d 222 (2010).
[27] Coucil, 151 Wn. App. at 132-136.
[28] Coucil, 151 Wn. App. at 134.

The defendant in Coucil was charged with felony harassment, was scheduled for a pretrial hearing, failed to appear for the hearing, and was found guilty of misdemeanor harassment. This court rejected the defendant's argument that the statute classified bail jumping based on the status of his underlying offense at the time of sentencing on the bail jumping charge. This court explained.

> Only by accepting Coucil's contention that bail jumping's seriousness remains undetermined until sentencing can the statute be considered ambiguous. If, instead, the offense is classified according to when it actually occurs—when the offender "fails to appear"—any ambiguity vanishes. Inasmuch as the penalty classifications in RCW 9A.76.170 use the present tense, this is the sole reasonable reading of the statute. Thus, a person who, while released on bail, knowingly "fails to appear" for a court hearing "is" guilty of bail jumping, which "is" (at that time) either a class A, B, or C felony, or a gross misdemeanor or misdemeanor, depending on the underlying offense's classification.[29]

This court also pointed out the defendant's argument would lead to absurd results.

> Taken to its logical conclusion, Coucil's interpretation would allow defendants acquitted of the underlying charges to suffer no penalty at all for jumping bail, because they would not be "held for, charged with, or convicted of" the underlying offenses at the time of sentencing.

> Coucil's interpretation of the statute is strained at best, given that the bail jumping statute is not intended to add to or diminish the punishment associated with the underlying offense.[30]

Because the bail jumping statute described the crime in the present tense, it made sense to determine the seriousness of the crime at the time of the offense. Here, the SSOSA statute requires the court to give "great weight to the victim's opinion" and defines "victim" to include "a parent or guardian of a victim who is a

---

[29] Coucil, 151 Wn. App. at 135.
[30] Coucil, 151 Wn. App. at 136.

12

minor." The use of the present tense "is" in this context indicates the legislature's intent to allow a parent or guardian of a child victim to advocate for the child about a SSOSA because the child may lack the capacity to effectively do so. If the legislature intended otherwise, it could have used the past tense "was." <u>Coucil</u> does not support Pervez's argument here.

In essence, Pervez argues the trial court should have given his wife's opinion, assuming she had an opinion in favor of a SSOSA, equal or greater weight as it gave K.P.'s opinion. But, K.P. is the true victim of his child molestation crimes. His wife would not help K.P. when she asked for help, and she denied Pervez engaged in any misconduct towards K.P. These facts do not show harm to his wife. Instead, this may show the wife/mother compounded the harm caused to K.P. The trial court assumed Pervez's wife wished for a SSOSA but concluded "the tie needs to go to [K.P.]." The trial court did not abuse its discretion in giving greater weight to K.P.'s opinion.

<u>Ineffective Assistance of Counsel</u>

Pervez argues his trial counsel provided ineffective assistance by failing to recognize and assert his wife was a "victim" under the SSOSA statute.

To establish an ineffective assistance claim, Pervez must show both (1) that his counsel's conduct fell below an objective standard of reasonableness, and (2) that a reasonable possibility exists, but for counsel's deficient performance, the outcome would have been different.[31] Our evaluation of counsel's performance is

---

[31] <u>State v. Thomas</u>, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

"highly deferential," and we employ "a strong presumption" of reasonableness.[32] Failure to satisfy either prong of the test defeats an ineffective assistance claim.[33] "When an ineffective assistance claim is raised on appeal, the reviewing court may consider only facts within the record."[34] If a defendant wants to rely on evidence outside of the trial record, he must use a personal restraint petition to present his claim.[35]

Counsel is not obligated to raise or argue every conceivable point, which in retrospect may seem important to the defendant.[36] Counsel need not pursue an investigation that would be fruitless.[37] Here, as explained above, Pervez' wife is not a "victim" under the SSOSA statute. So, his counsel was not deficient in not asserting she was a victim. Thus, Pervez's ineffective assistance claim fails.

Discretionary Costs

Pervez argues, and the State concedes, the trial court improperly imposed community custody supervision fees because he is indigent. Community custody supervision fees are discretionary costs.[38] A sentencing court may not impose discretionary costs on indigent defendants.[39] The State does not dispute Pervez is indigent. The trial court apparently intended to impose only a $500 mandatory

[32] Thomas, 109 Wn.2d at 226; Strickland, 466 U.S. at 689.

[33] Strickland, 466 U.S. at 697.

[34] State v. Grier, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011).

[35] Grier, 171 Wn.2d at 29.

[36] Stenson, In re Personal Restraint of, 142 Wn.2d 710, 735, 16 P.3d 1 (2001).

[37] Matter of Lui, 188 Wn.2d 525, 548-49, 397 P.3d 90 (2017).

[38] State v. Lundstrom, 6 Wn. App.2d 388, 396, 429 P.3d 1116 (2018); RCW 9.94A.703(2)(d).

[39] RCW 10.01.160(3).

crime victim assessment and a $100 DNA sample fee. But, the judgment and sentence included form language requiring Pervez to pay supervision fees. We accept the State's concession and remand to strike the supervision fees from the judgment and sentence.

## CONCLUSION

We remand to strike the community custody supervision fees. Otherwise, we affirm.

_Leach, J._

WE CONCUR: