# NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 4, 2023

*Gonzáles C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 4, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DENVER LEE SHOOP,<br><br>Petitioner. | NO. 101196-2<br><br>EN BANC<br><br>Filed: May 4, 2023 |

GORDON McCLOUD, J.— Denver Lee Shoop kept a small herd of eight bison on his property. The State charged him with eight counts of animal cruelty in the first degree in violation of RCW 16.52.205(2)[1] for his treatment of those eight bison.

Subsection (2) of RCW 16.52.205 states that one commits "animal cruelty in the first degree" when "he or she, with criminal negligence, *starves, dehydrates, or*

___

[1] RCW 16.52.205 was revised in June 2020, after Shoop's conviction, to reflect its current form. LAWS OF 2020, ch. 158, § 6. The legislature amended the statute to state that a person is guilty of animal cruelty in the first degree when a person "starves, dehydrates, or suffocates an animal, or *exposes an animal to excessive heat or cold*." RCW 16.52.205(2)(a) (emphasis added). The italicized portion is not before us. Because the amendment does not impact the statutory language relied on by this court, we refer to the current statute.

*suffocates* an animal . . .” and causes considerable suffering or death. (Emphasis added.) The State included each of those three italicized ways of negligently committing animal cruelty in each of the eight counts. The jury convicted Shoop as charged, without specifying which of those three italicized ways the State actually proved.

Shoop appealed. He argued, in part, that RCW 16.52.205(2) constitutes an “alternative means” crime, so either (1) the jury had to achieve unanimity about which means the State proved beyond a reasonable doubt or (2) the record had to show that sufficient evidence supported each of those multiple means.[2] Neither occurred in this case. Shoop therefore contends that his convictions must be reversed.

The Court of Appeals disagreed. *State v. Shoop*, 22 Wn. App. 2d 242, 510 P.3d 1042 (2022) (published in part). It held that RCW 16.52.205(2) defined a single crime and a single means, so neither jury unanimity as to “means” nor sufficient evidence on each of the three “means” were required. *Id.* at 253.

How to determine whether a statute defines a single means of committing a crime or alternative means of committing a crime is a recurring and challenging

---

[2] *State v. Sandholm*, 184 Wn.2d 726, 732, 364 P.3d 87 (2015); *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994).

*State v. Shoop (Denver Lee)*, No. 101196-2

question. This case provides an opportunity for us to clarify our precedent on this point.

We hold that RCW 16.52.205(2) describes a single crime of animal cruelty in the first degree. That statutory subsection's list of ways of committing animal cruelty—negligently starving, dehydrating, or suffocating—constitute "minor nuances inhering in the same act [or omission]," *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015), not completely different acts, i.e., not "alternative means."

We therefore affirm the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY

Shoop owned eight bison and he kept them on his property in Chimacum, Washington. 7 Tr. of Proc. (Oct. 8, 2019) at 1248, 1380. In April 2018, an animal control officer received a complaint about the health of those bison. *Id.* at 1247. The animal control officer investigated the complaint and determined that the animals needed immediate feeding. *Id.* at 1249-54, 1269-71. The animal control officer obtained a warrant to seize the bison and, after seizure, experts confirmed that the bison were emaciated. *Id.* at 1270-71, 1327-28, 1339.

The State charged Shoop with eight counts of animal cruelty in the first degree in violation of RCW 16.52.205(2). Clerk's Papers (CP) at 30-32 (Third Am. Info.). Each count pertained to a different bison, and each count alleged that Shoop

3

*State v. Shoop (Denver Lee)*, No. 101196-2

had mistreated that particular bison in one of the three ways that RCW

16.52.050(2) prohibits: by criminally negligent starvation, by criminally negligent

dehydration, or by criminally negligent suffocation.

The jury instructions tracked the charges. CP at 149-86. Each instruction

pertained to a different bison, and each instruction stated that the jury had to find

that "on an occasion separate and distinct from the act alleged [in the other

counts]," Shoop, "with criminal negligence, starved, dehydrated, or suffocated an

animal" and as a result "caused substantial and unjustifiable physical pain that

extended for a period sufficient to cause considerable suffering." *Id.* at 163-70.[3]

The first trial ended with a deadlocked jury. *Id.* at 29 (Ord. re: Mistrial). The

State retried Shoop, and the second jury convicted him on all eight counts. *Id.* at

232 (Felony J. & Sentence—First-Time Offender).

Shoop appealed his convictions.[4] *Id.* at 241. As discussed above, he argued

that RCW 16.52.205(2) creates three separate crimes—what our decisions have

called "alternative means" of committing the RCW 16.52.050(2) crime. He sought

reversal because the jury did not unanimously agree on which of the three means

---

[3] The jury was also provided with an instruction defining the term "starve" as "to deprive of nourishment." CP at 162.

[4] Shoop also appealed his order of restitution. *Id.* at 281-82. That appeal was consolidated with the appeal of his conviction.

*State v. Shoop (Denver Lee)*, No. 101196-2

the State proved and the State did not provide sufficient evidence to support each alternative means.

The Court of Appeals affirmed. *Shoop*, 22 Wn. App. 2d 242. We granted review to decide whether RCW 16.52.205(2) defines an alternative means crime and, if so, whether the State provided sufficient evidence of each charged means. Ord., *State v. Shoop*, No. 101196-2 (Wash. 2022).

STANDARD OF REVIEW

Whether RCW 16.52.205's subsection (2) defines one means of committing animal cruelty in the first degree, or three alternative means of committing that crime, is an issue of statutory interpretation. We review that statutory interpretation issue de novo. *Sandholm*, 184 Wn.2d at 736. We use our usual rules of statutory interpretation, starting with the plain language of the statute. *Id*. at 732.

ANALYSIS

I.   Criminal Defendants Have a Constitutional Right to a Unanimous Jury, and That Right Leads to Special Rules When the State Charges a Crime with "Alternative Means"

Criminal defendants have the right to a unanimous jury verdict. WASH. CONST. art. I, § 21; *Sandholm*, 184 Wn.2d at 732; *see also Ramos v. Louisiana*, 590 U.S. __, 140 S. Ct. 1390, 1395, 206 L. Ed. 2d 583 (2020).

That rule has significant implications for statutes that list more than one way of committing a crime. "In alternative means cases, where the criminal offense can

5

*State v. Shoop (Denver Lee)*, No. 101196-2

be committed in more than one way, we have announced a rule that an expression

of jury unanimity [as to the means] is not required provided each alternative means

presented to the jury is supported by sufficient evidence. But when insufficient

evidence supports one or more of the alternative means presented to the jury, the

conviction will not be affirmed." *Sandholm*, 184 Wn.2d at 732 (citing *State v.*

*Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994)); *see generally*

*State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

In this case, there was insufficient evidence of suffocation.[5] We must

therefore determine whether the charged crime—animal cruelty in the first degree

in violation of subsection (2) of RCW 16.52.205—defines a crime that "can be

committed in . . . one way [by one means]" or defines a crime that "can be

committed in more than one way [by alternative means]." *Sandholm*, 184 Wn.2d at

732.

II.    Whether a Crime Contains "Alternative Means" Depends on the
       Statutory Language, and RCW 16.52.205(2) Lists "Consistent" Acts That
       "May" Inhere in the Same Transaction of Animal Cruelty in the First
       Degree, Not Three Different, "Repugnant" Means

We start with the statutory language.  *State v. Smith*, 159 Wn.2d 778, 784-

85, 154 P.3d 873 (2007); *State v. Linehan*, 147 Wn.2d 638, 646-47, 56 P.3d 542

(2002).

---

[5] The State presented no evidence that Shoop suffocated the eight bison.

*State v. Shoop (Denver Lee)*, No. 101196-2

The statutory subsection at issue here, RCW 16.52.205(2), provides:

> A person is guilty of animal cruelty in the first degree when . . . he or she, with criminal negligence, starves, dehydrates, or suffocates an animal . . . and as a result causes: (i) Substantial and unjustifiable physical pain that extends for a period sufficient to cause considerable suffering; or (ii) death.[6]

The inquiry is whether this quoted language—negligently "starves, dehydrates, or suffocates"—describes "*distinct acts*" or similar acts. *State v. Peterson*, 168 Wn.2d 763, 770, 230 P.3d 588 (2010). If it describes distinct acts, then each distinct act constitutes a separate means and, hence, a separate crime. *Id*. If it contains only different definitions or descriptions of one overall criminal act, then that one overall criminal act constitutes the single "means" and, hence, the single crime. *See Smith*, 159 Wn.2d at 785-86 (definitional instructions for assault did not describe alternative means). In other words, "[t]he more varied the criminal conduct, the more likely the statute describes alternative means. But when the statute describes minor nuances inhering in the same act, the more likely the various 'alternatives' are merely facets of the same criminal conduct." *Sandholm*, 184 Wn.2d at 734.

Factors that help us distinguish between "distinct acts" (or means) and "minor nuances inhering in the same act" include "'[1] the title of the [statutory]

---

[6] The statute also contains two other subsections. Subsection (1) essentially criminalizes intentionally torturing animals. Subsection (3) criminalizes sexual conduct with an animal. Subsection (1) and subsection (3) are not before us.

act; [2] whether there is a readily perceivable connection between the various acts

set forth; [3] whether the acts are consistent with and not repugnant to each other;

[4] and whether the acts may inhere in the same transaction.'" *State v. Arndt*, 87

Wn.2d 374, 379, 553 P.2d 1328 (1976) (most alterations in original) (quoting *State*

*v. Kosanke*, 23 Wn.2d 211, 213, 160 P.2d 541 (1945)).

Some aspects of statutory language are *not* controlling. For example, the

legislature may use the disjunctive "or" or it may divide a statute into subsections;

those linguistic choices alone do not determine whether the crime contains

alternative means. *Sandholm*, 184 Wn.2d at 734 (citing *Owens*, 180 Wn.2d at 96).

The legislature may also provide different definitions or descriptions of a crime;

that descriptive choice is not necessarily dispositive of whether the crime contains

alternative means, either. *Smith*, 159 Wn.2d at 784-85.

Application of these rules can be difficult. The Court of Appeals has

grappled with whether RCW 16.52.205(2) defines an alternative means crime in

several cases. First, in *State v. Peterson*, the defendant was convicted of six counts

of animal cruelty in the first degree for starving and dehydrating horses. 174 Wn.

App. 828, 844, 301 P.3d 1060 (2013), *abrogated by State v. Jallow*, 16 Wn. App.

2d 625, 640, 482 P.3d 959 (2021). The appellate court stated that "starvation,

dehydration, and suffocation are different ways of committing the crime of animal

cruelty in the first degree and are not merely descriptive or definitional but, rather,

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

separate and essential terms of the offense." *Id.* at 851. That court affirmed the convictions, however, because the evidence sufficed to support each alternative means charged. *Id*. at 853.

But a few years later, in *State v. St. Clare*, the concurrence came to a different conclusion. 198 Wn. App. 371, 383-86, 393 P.3d 836 (2017) (Dwyer, J., concurring). In that case, St. Clare argued that RCW 16.52.205(2) was an alternative means crime and that there was insufficient evidence to prove that she had both dehydrated and starved her cats. *Id.* at 380-81. The majority held that the State presented sufficient evidence of both types of cruelty; for that reason, it did not address whether RCW 16.52.205(2) constituted an alternative means crime. *Id.* at 381-82. The concurrence, however, did reach that issue. It opined that *Peterson*'s holding on this point was incorrect, and that RCW 16.52.205(2) does not constitute an alternative means crime because starvation, dehydration, and suffocation are different descriptions of essentially the same crime. *Id.* at 386 (Dwyer, J., concurring). In other words, the concurrence asserted that RCW 16.52.205 created three different "means"—its subsections (1), (2), and (3) —but that subsection (2) did not create any additional, distinct crimes.

Most recently, in *Jallow*, the Court of Appeals essentially endorsed the conclusion of the *St. Clare* concurrence. 16 Wn. App. 2d 625. The *Jallow* court held that RCW 16.52.205(2) defined a single crime, not three alternative means

*State v. Shoop (Denver Lee)*, No. 101196-2

crimes. *Id.* at 640. The *Jallow* court reasoned that subsection (2) criminalized depriving an animal of the necessities of life and that starving, dehydrating, suffocating, or exposing the animal to excessive heat or cold[7] were simply different ways of committing that general overall crime. *Id*. (This panel of Division One explicitly disagreed with its prior decision in *Peterson*.)

Our prior, controlling, case law compels us to agree with the result reached by the concurrence in *St. Clare* and the court in *Jallow*: subsection (2) does not create alternative means but, rather, defines the same general criminal conduct— "animal cruelty in the first degree"—that the statute prohibits.

We start with the factors that our court typically asks when confronted with an alternative means issue. As discussed above, we have asked whether the alleged "alternative means" have a "readily perceivable connection," whether they are "consistent with and not repugnant to each other," and whether "the acts *may* inhere in the same transaction." *Arndt*, 87 Wn.2d at 379 (emphasis added). In this case, starvation, dehydration, and suffocation have a "readily perceivable connection" (describing animal cruelty), they are "consistent with and not repugnant to each other" (describing a negligent course of conduct that results in deprivation of food, water, or air), and "the acts *may* inhere in the same

---

[7] *See supra* note 1.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

transaction" (deprivation of sufficient nourishment or space).[8] *Id.* (emphasis added). In addition, starvation, dehydration, and suffocation constitute "facets of the same criminal conduct"—ignoring the animal's bodily needs—over what could be the same period of time. *Sandholm*, 184 Wn.2d at 734.  Finally, while not dispositive, we note that RCW 16.52.205(2) comprises a single subsection, not "sub-subsections" for suffocation, dehydration, and starvation. *See Owens*, 180 Wn.2d at 98 (terms in list form indicates legislative intent to treat terms as one group, not separate alternative means). *See generally Smith*, 159 Wn.2d at 784 (legislature's decision to divide RCW 9A.36.021 into subsections showed intent to treat each subsection as an alternative means of committing second degree assault).

We next examine our application of these factors to particular cases.  In *Sandholm,* our court was asked whether former RCW 46.61.502 (2008), which made it a crime to drive under the influence of alcohol, under the influence of drugs, or under the combined influence of alcohol and drugs, constituted a single means of committing a single crime or alternative means. 184 Wn.2d at 733. We

---

[8] Shoop argues that starvation, dehydration, and suffocation do not *necessarily* inhere in the same transaction because a person can commit one of those acts without committing the other. Suppl. Br. of Pet'r at 17-18. But our decisions have held that courts must ask whether the acts *may* inhere in the same transaction, not whether they must inhere in the same transaction.  And starvation, dehydration, and suffocation *may* inhere in the same transaction (i.e., keeping an animal in an enclosure with insufficient food, water, or ventilation). Additionally, this is one factor of several to consider when determining whether the legislature enacted an alternative means crime.

held that the statute created the single crime of driving under the influence, not alternative means. *Id.* at 735-36. We explained that the DUI statute criminalized one type of conduct—driving while under the influence of certain substances that cause impairment. *Id.* The statute described facets of the same conduct (impairment via alcohol, drugs, or both), but not distinct criminal acts. *Id.*

Similarly, in *Owens*, our court was asked whether RCW 9A.82.050(1), which made it a crime to "'knowingly initiate[], organize[], plan[], finance[], direct[], manage[], or supervise[] the theft of property for sale to others,'" constituted a single means of committing a single crime or alternative means. 180 Wn.2d at 96-97 (quoting RCW 9A.82.050(1)). We held that this first portion of RCW 9A.82.050(1), the first degree trafficking in stolen property statute, defined a single crime—in other words, it created only one means of committing trafficking. *Id.* at 96.[9] The court reasoned that the seven quoted terms did not describe distinct acts "because of how closely related those terms are." *Id.* at 99. The court further explained that "these terms are merely different ways of committing one act, specifically stealing," and that the conduct described did not "not vary significantly between the seven terms listed in the first clause." *Id.* As a result, in *Owens*, just as in *Sandholm*, we concluded that the statute described facets of the same conduct

---

[9] We acknowledged that later language within that same subsection created a separate, alternative means of committing the crime of trafficking in the first degree. *Owens*, 180 Wn.2d at 98.

12

(driving under the influence of a substance or substances), but not distinct criminal acts.

Under the factors discussed above and the reasoning of *Sandholm* and *Owens*, the language "starves, dehydrates, or suffocates" describes different ways of committing the single criminal course of conduct of negligence resulting in animal cruelty. While it is true that one can intentionally starve, dehydrate, and suffocate an animal in different ways, RCW 16.52.205(2) criminalizes a negligent course of action or inaction resulting in those harms. It could be the same course of action or inaction that causes all three harms—continuously ignoring the animal's physical needs. In fact, the distinctions between starvation, dehydration, and suffocation are similar to what we treated as minor distinctions in *Owens* between "'initiat[ing]'" a theft and "'financ[ing]'" a theft: initiation and financing require different physical actions but define the same general conduct of promoting stealing. *Owens*, 180 Wn.2d at 96 (quoting RCW 9A.82.050(1)). The distinction between these three types of harms—starvation, dehydration, and suffocation—are also similar to what we treated as minor distinctions in *Sandholm* between impaired driving due to alcohol, due to drugs, or due to alcohol plus drugs: taking drugs and drinking alcohol require different physical actions but define the same general conduct of driving while impaired.

13

The legislature criminalized animal cruelty in the first degree by means of negligence leading to deprivation of food, water, or air. These separate ways of committing animal cruelty are no more varied than the separate ways of committing DUI or theft discussed above.[10]

We therefore hold that RCW 16.52.205(2) defines a single crime, not three alternative means of committing essentially three separate crimes. We disavow the statement in *Peterson* to the contrary. 174 Wn. App. 828.  Because RCW 16.52.205(2) defines a single crime, we do not address whether the State provided sufficient evidence to prove each of the alleged "means" (starvation, dehydration, or suffocation) beyond a reasonable doubt.

CONCLUSION

RCW 16.52.205(2) defines a single crime, not three alternative means of committing essentially three crimes. We affirm the Court of Appeals.

---

[10] Shoop also argues that the legislature could not have intended to criminalize the failure to provide all "the necessities of life" in RCW 16.52.205(2) because a different statute in the same title criminalizes failure to provide other necessities of life. Shoop points specifically to RCW 16.52.207, animal cruelty in the second degree, which criminalizes an owner's failure "to provide the animal with necessary shelter, rest, sanitation, space, or medical attention." RCW 16.52.207(2)(a); Suppl. Br. of Pet'r at 16. We disagree.  The fact that the legislature chose to punish certain forms of animal cruelty more harshly than other forms of animal cruelty is a choice that the legislature can make. That choice has no bearing on whether "starves, dehydrates, or suffocates" constitute alternative means of committing animal cruelty in the first degree.

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.