# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>MARILYN ROSE BRISBOIS,<br><br>Appellant. | No.  54091-6-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Marilyn Brisbois appeals her conviction for second degree assault.  She argues that (1) the evidence was insufficient to support the conviction, (2) the trial court abused its discretion by permitting the State to amend the information on the morning of trial to include accomplice liability, (3) improper jury instructions resulted in inconsistent jury verdicts, and (4) she received ineffective assistance of counsel on several grounds.[1]  Brisbois also claims that based on the cumulative error doctrine, her conviction should be reversed.

We hold that the evidence was sufficient to support her conviction, the trial court did not abuse its discretion by permitting the State to amend the information, and the jury instructions did not contribute to inconsistent verdicts.  We further hold that Brisbois did not receive ineffective

---

[1] Brisbois also alleged that her Sixth Amendment right under the United States Constitution to confront witnesses was violated when the trial court admitted an anonymous witness' statement and that she received ineffective assistance of counsel when her counsel stipulated to the admission of the arrest video of Brisbois's co-defendant.  However, in her reply brief, Brisbois states that she "does not continue to assert" these claims.  Reply Br. at 1.  Accordingly, we do not address these issues.

assistance of counsel. Accordingly, because there was no error, we hold that the cumulative error doctrine does not apply. We affirm Brisbois's conviction.

FACTS

I. BACKGROUND

In November 2018, Chelsea Eichner turned 21 years old and went to a local bar to have a celebratory drink with her friends and family. Eichner had grown up near Brisbois and Jenna Hernandez. Eichner did not know the two women personally, but her family knew of both of them.

Eichner stepped outside the bar to smoke a cigarette and look for her friend. According to Eichner, as she was lighting her cigarette, she was "grabbed from behind and thrown to the ground." Verbatim Report of Proceedings (VRP) (Aug. 12, 2019) at 73. Hernandez punched her and Brisbois "kicked [her] in the face multiple times." VRP (Aug. 12, 2019) at 73. Eichner went to the hospital and was diagnosed with a broken nose, among other injuries. This diagnosis was confirmed by a computed tomography (CT) scan.

II. PROCEDURAL HISTORY AND TRIAL TESTIMONY

The State charged Brisbois with second degree assault:

> That [s]he, MARILYN ROSE BRISBOIS, in the County of Skamania, State of Washington, on or about NOVEMBER 13, 2018, did intentionally assault another person, to wit: Chelsea Eichner, and thereby did recklessly inflict substantial bodily harm; contrary to Revised Code of Washington 9A.36.021(1)(a).

Clerk's Papers (CP) at 1-2. The information did not allege that Brisbois committed the crime as an accomplice. Hernandez was separately charged with the same offense.

On July 17, 2019, the State moved to join Hernandez's and Brisbois's cases. On August 12, 2019, the day that Brisbois's trial began, the trial court signed the order joining the two cases.

On the morning of trial, the State moved to amend the information and the trial court granted this motion. The amended information added accomplice liability to the end of the existing language in the original information; the additional language stated, "And/or was accomplice to said crime under Revised Code of Washington 9A.08.020." CP at 82-83. Hernandez's information was similarly amended. Brisbois's counsel did not object to the amendment of the information.

The case proceeded to trial.

Eichner testified that while she was in the parking lot outside the bar, Hernandez threw her to the ground, and Brisbois kicked her in the face repeatedly. Alexandria Keith and Kaitlyn Jones, two of Eichner's friends, both testified to the events that night. VRP (Aug. 13, 2019) at 37.

The State presented testimony from the emergency room physician, Karen O'Neill, who treated Eichner on the night of the assault. Dr. O'Neill testified that Eichner had a broken nose that was confirmed by a CT scan. Eichner testified that she had broken her toe at work at around 1:00 PM ON the day of the incident. Dr. O'Neill testified that Eichner's medical history included a note under her "social history" that she liked dirt bike riding. VRP (Aug. 12, 2019) at 132.

Brisbois testified that she told Eichner and Jones to "[s]top acting like stupid b*tches," because they were standing on top of a vehicle in the parking lot. VRP (Aug. 13, 2019) at 215-16. Shortly thereafter, Eichner and Jones climbed down from the vehicle and began yelling at Brisbois. Hernandez came outside during this exchange and began yelling as well.

Brisbois testified that she then saw Eichner move toward Hernandez and grab Hernandez by the sweater. When she saw Eichner reach for Hernandez, she (Brisbois) grabbed Eichner by the waist and pulled her away. Eichner then hit her three times. Brisbois testified that she

3

responded by "grab[bing] [Eichner] by her throat and kick[ing] her feet out from underneath her" and then "jump[ing] on top of her and punch[ing] her." VRP (Aug. 13, 2019) at 223-24. Brisbois acknowledged that she punched [Eichner] in the face "five or six times." VRP (Aug. 13, 2019) at 224. Hernandez pulled Brisbois off of Eichner and they departed. Hernandez testified that she (Hernandez) never touched Eichner.

Among other instructions, the trial court instructed the jury that the lawful use of force (self-defense) is a defense to second degree assault, that each defendant is charged separately, that the jury "must decide the case of each defendant separately," and that the jury's verdict as to one defendant should not control its verdict for the other defendant. CP at 100, 109. Brisbois did not object to these instructions. Brisbois's counsel argued in closing that Brisbois did not just engage in "self-defense, but defense of others." VRP (Aug. 13, 2019) at 292.

The jury found Brisbois guilty of second degree assault, but it acquitted Hernandez of second degree assault. Brisbois appeals her conviction.

ANALYSIS

I. SUFFICIENT EVIDENCE

Brisbois first argues that the evidence was insufficient to support the conviction because the State presented insufficient evidence that she "recklessly" inflicted "substantial bodily harm" on Eichner. She further argues that the evidence was insufficient to establish that she was one of the people who assaulted Eichner. We disagree.

A.  LEGAL PRINCIPLES

Due process requires the State to prove all elements of the crime beyond a reasonable doubt. *State v. W.R., Jr.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014). Evidence is sufficient if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). Courts must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Under RCW 9A.36.021(1)(a),

> A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree . . . intentionally assaults another and thereby recklessly inflicts substantial bodily harm.

B.  IDENTIFICATION OF BRISBOIS

Brisbois argues that there was insufficient evidence to support the identification of Brisbois as Eichner's attacker because "there was conflicting testimony regarding whether [Eichner] was the person to identify . . . Brisbois as one of the people involved in the incident." Br. of Appellant at 17. Brisbois claims that other witnesses testified that they did not see Brisbois near the fight or see her strike Eichner.

Here, the State presented testimony from Eichner herself identifying Brisbois in the courtroom as the person who hit her, describing Brisbois's appearance during the assault, and identifying Brisbois in a photograph. Additionally, Keith identified Brisbois in the courtroom and as being one of the persons who attacked Eichner. Furthermore, Brisbois admitted during her testimony that she was the person who hit Eichner. Viewing this evidence in the light most

favorable to the State, the State provided sufficient evidence for the jury to conclude beyond a reasonable doubt that Brisbois was sufficiently identified as the person who attacked Eichner.

C.  RECKLESSNESS

Brisbois next argues that insufficient evidence was presented that any injury sustained by Eichner was recklessly inflicted.  We disagree.

A person acts "recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation."  RCW 9A.08.010(1)(c).  Courts have previously held that "any reasonable person knows that punching someone in the face could result in a broken . . . nose . . . which would constitute substantial bodily harm."  *State v. R.H.S.*, 94 Wn. App. 844, 847, 974 P.2d 1253 (1999).

The State presented testimony from Eichner and Keith that Brisbois kicked Eichner in the face multiple times after Hernandez had thrown her to the ground.  Brisbois herself admitted that she repeatedly punched Eichner in the face while Eichner was on the ground.  This evidence when viewed in the light most favorable to the State is sufficient to establish that Brisbois acted recklessly.

D.  SUBSTANTIAL BODILY HARM

Brisbois next claims that the State failed to prove that Eichner's injuries constituted "substantial bodily harm" as required to convict her of second degree assault, citing the emergency room doctor's testimony.  Brisbois claims the injuries could have happened some other way.  We disagree.

6

Under RCW 9A.04.110(4)(b),

"Substantial bodily harm" means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part.

The State presented testimony from the emergency room physician who treated Eichner on the night of the assault and who testified that Eichner had a nasal bone fracture (a broken nose) among other injuries. Dr. O'Neill also testified that her diagnosis of a broken nose was confirmed by a CT scan. This evidence of Eichner's broken nose meets the definition of "substantial bodily harm" in RCW 9A.04.110(4)(b).

Brisbois contends that the evidence of the nasal injury did not establish substantial bodily harm because there was no testimony about when it occurred and Eichner engaged in other activities that could have caused the injury, such as dirt bike riding. Although Eichner testified that she had broken her toe in a workplace related incident earlier on the day of the assault, and her medical history indicated that she rode dirt bikes in her spare time, Eichner did not say that she had ever broken her nose. And there was evidence that Eichner had been hit in the nose. This evidence, when viewed in the light most favorable to the State, is sufficient to establish that Eichner's nose was injured in the assault and, thus, that she suffered substantial bodily harm.

E. CONCLUSION

Because the State presented sufficient evidence that Eichner suffered substantial bodily harm, that Brisbois acted recklessly, and that Brisbois was the person who assaulted Eichner, we hold that the State presented sufficient evidence to support Brisbois's conviction for second degree assault.

## II. AMENDED INFORMATION

Brisbois next argues that the trial court erred when it allowed the amendment of the information on the morning of trial to add accomplice liability because this amendment prejudiced her defense that she acted in self-defense or in the defense of others. We disagree.

A defendant must be informed of the charges against them and cannot be tried for uncharged offenses. *State v. Gehrke*, 193 Wn.2d 1, 6, 434 P.3d 522 (2019). We review a trial court's decision to allow the State to amend the information for an abuse of discretion. *Gehrke*, 193 Wn.2d at 6.

CrR 2.1(d) allows for the amendment of the information at any time before the verdict, as long as the amendment does not prejudice the "substantial rights of the defendant." The defendant bears the burden of showing prejudice. *State v. Brooks*, 195 Wn.2d 91, 101, 455 P.3d 1151 (2020).

Brisbois undermines her own argument by citing *State v. Rodriguez*, 78 Wn. App. 769, 774, 898 P.2d 871 (1995). Under *Rodriguez*, "an information which charges an accused as a principal adequately apprises him or her of potential accomplice liability." 78 Wn. App. at 774. Accordingly, the amendment of the information here did not prejudice Brisbois because she was originally charged as a principal with second degree assault; thus, Brisbois cannot show prejudice. Because the amendment was not prejudicial, we hold that the trial court did not abuse its discretion by permitting the State to amend the information.

Brisbois also argues that her counsel was ineffective for failing to object to the amendment of the information. Where the appellant claims ineffective assistance based on her trial counsel's failure to object, the appellant must also show that such an objection, if made, would have been successful in order to establish deficient performance. *State v. Gerdts*, 136 Wn. App. 720, 727,

150 P.3d 627 (2007). Brisbois cannot demonstrate deficient performance because, as discussed above, the trial court did not err in allowing the amendment, so any objection to the amended information would not have been successful. Because we hold that the amendment to the information was proper, we also hold that Brisbois cannot establish ineffective assistance of counsel based on counsel's failure to object to the amendment.

### III. IMPROPER JURY INSTRUCTION RESULTING IN INCONSISTENT VERDICTS

Brisbois further argues that the trial court improperly instructed the jury and that these instructional errors contributed to inconsistent verdicts. We disagree.

### A. LEGAL PRINCIPLES

"We review jury instructions de novo, within the context of the jury instructions as a whole." *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010) (emphasis omitted) (quoting *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002)).

### B. TO-CONVICT INSTRUCTION (JURY INSTRUCTION NUMBER 9)

Brisbois argues that the to-convict instruction for second degree assault was deficient and produced inconsistent verdicts because it left out an essential element: "the absence of self-defense." Reply Br. at 8-9. We reject Brisbois's argument because "the absence of self-defense" is not an essential element of the charged crime and, therefore, did not need to be included in the to-convict instruction.

We review the adequacy of a challenged "to-convict" jury instruction de novo. *State v. Jallow*, 16 Wn. App. 2d 625, 634, 482 P.3d 959 (2021). "A to-convict instruction must contain all of the essential elements of the crime because it serves as a 'yardstick' for the jury to measure innocence or guilt." *Jallow*, 16 Wn. App. 2d at 634.

In *State v. Hoffman*, 116 Wn.2d 51, 109, 804 P.2d 577 (1991), our Supreme Court rejected the argument that self-defense must be included as an element of the charged crime in the "'to-convict'" jury instruction. The court explicitly approved the method of giving a separate self-defense instruction. *Hoffman*, 116 Wn.2d at 109. *Hoffman* remains good law and we are bound by Supreme Court precedent. *State v. Winborne*, 4 Wn. App. 2d 147, 175, 420 P.3d 707 (2018).

Here, the to-convict instruction read, in relevant part:

> To convict [Brisbois] of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about November 13, 2018, [Brisbois] intentionally assaulted [Eichner];
>
> (2) That [Brisbois] thereby recklessly inflicted substantial bodily harm on [Eichner]; and
>
> (3) That this act occurred in the State of Washington.

CP at 102. The trial court further instructed the jury on self-defense in instruction number 16—that the lawful use of force is a defense to second degree assault and it was the State's burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful.

Because under *Hoffman*, self-defense is not an essential element of second degree assault, the court's to convict instruction did not need to include self-defense. We hold that the trial court did not err in its to-convict instruction for second degree assault.

C.  ALTERNATIVE MEANS

Brisbois next claims the trial court's instructions should have been revised to reflect that her trial and Hernandez's trial were consolidated and the amended information as to the charges included an alternative theory of accomplice liability for each defendant.  Brisbois contends that the trial court contributed to the jury reaching "inconsistent verdicts" because it failed to use the Washington Pattern Jury Instruction: Criminal 4.23's alternative elements and means instruction to clarify the essential elements of second degree assault and further erred by giving many jury instructions without guidance as to how to connect the instructions.  11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.23 (5th ed. 2021) (WPIC).  We reject Brisbois's argument because WPIC 4.23 addresses alternative means for committing a single offense and accomplice liability is not an alternative means of committing the charged crime of second degree assault.

Washington courts have repeatedly held that participation in a crime as an accomplice or as a principal does not amount to alternative means of committing the charged crime.  *State v. Walker*, 182 Wn.2d 463, 484, 341 P.3d 976 (2015); *see also Hoffman*, 116 Wn.2d at 104-05. Acting as an accomplice as opposed to as the principal does not amount to an alternative means of committing the charged crime because:

> The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation.  Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant.  The elements of the crime remain the same.

*State v. Carothers*, 84 Wn.2d 256, 264, 525 P.2d 731 (1974).

Because accomplice liability is not an alternative means of committing the charged crime, WPIC 4.23 would not have been an appropriate instruction, and thus, the trial court did not err by not giving this instruction.

D. JURY INSTRUCTION NUMBER 7

Brisbois next claims that instruction number 7, which states that a separate crime is charged against each defendant and that the jury must decide the case of each separately, is "quite troubling, given that the trials were consolidated right before they commenced." Appellant's Opening Br. at 26; CP at 100. She claims that this instruction may have confused the jury and misled them to thinking that only one of the two defendants committed the crime. We disagree.

Instruction number 7 stated:

> A separate crime is charged against each defendant. You must decide the case of each defendant separately. Your verdict as to one defendant should not control your verdict as to the other defendant.

CP at 100.

The record does not reflect that the jury was confused or misled by this instruction. At no point in time did the jury pose a question to the trial court. Further, the instruction says that the verdict as to one defendant should not control the verdict as to the other defendant; it does not say that only one defendant could be guilty. Accordingly, we hold that the trial court did not err by giving this instruction.

E. *VALLADARES* AND INCONSISTENT VERDICTS

Brisbois cites to *State v. Valladares*, 99 Wn.2d 663, 664 P.3d 508 (1983), to support her contention that there are inconsistent verdicts because she was convicted and her co-defendant was acquitted, and thus, her conviction must be reversed. We disagree.

*Valladares* is factually distinct from this case. 99 Wn.2d at 666-67. Following a joint trial, the jury in *Valladares* found one defendant, Rudolpho Valladares, guilty of unlawful delivery of a controlled substance (cocaine), unlawful possession of a controlled substance (cocaine), and conspiracy to commit the offense of delivery of a controlled substance (cocaine). *Valladares*, 99 Wn.2d at 666-67. The jury found the other defendant guilty of possession, but not guilty of the conspiracy charge. *Valladares*, 99 Wn.2d at 667. The other defendant was not charged with unlawful delivery of a controlled substance (cocaine). *Valladares*, 99 Wn.2d at 666-67. The court held that the acquittal of the only alleged co-conspirator mandated a reversal of the defendant's conspiracy conviction. *Valladares*, 99 Wn.2d at 670.

Here, Brisbois and Hernandez were co-defendants tried jointly, but they were not charged with conspiracy. Co-defendants are individuals who are accused of committing the same crime. *Defendant*, BLACK'S LAW DICTIONARY (11th ed. 2019). Co-conspirators are individuals who are accused of committing a conspiracy with another person. *Coconspirator*, BLACK'S LAW DICTIONARY (11th ed. 2019). Accordingly, because Brisbois was not charged with conspiring to commit a crime with Hernandez, *Valladares* does not support Brisbois's argument that she and Hernandez received inconsistent verdicts and that her conviction should be reversed.

## F. INEFFECTIVE ASSISTANCE OF COUNSEL

Brisbois also argues that her counsel was ineffective for failing to object to jury instruction numbers 7, 9, and 16, which she claims were improper. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel.

*State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We apply de novo review to claims of ineffective assistance of counsel. *Estes*, 188 Wn.2d at 457.

To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him or her. *Estes*, 188 Wn.2d at 457-58 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)). If either prong of the test is not met, the defendant's ineffective assistance of counsel claim fails and the inquiry ends. *Strickland*, 466 U.S. at 687.

Where the appellant claims ineffective assistance based on trial counsel's failure to object, the appellant must also show that such an objection, if made, would likely have been successful in order to establish deficient performance. *Gerdts*, 136 Wn. App. at 727. Brisbois's ineffective assistance of counsel claim fails because she fails to show that any objection to the jury instructions would not have been sustained. As discussed above, the trial court did not err by giving these instructions to the jury, we also hold that Brisbois cannot show that counsel was defective and thus, we do not reach prejudice and her claim of ineffective assistance of counsel fails.

G. CONCLUSION

We hold that the jury verdicts are not "inconsistent" and the challenged jury instructions were proper. Therefore, Brisbois's ineffective assistance of counsel claim fails.

IV. ADDITIONAL INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Brisbois further asserts that the following actions constitute ineffective assistance of counsel: (1) consenting to the State's motion to exclude evidence of Eichner's prior bad acts; (2) failing to object to the State's consolidation motion; (3) "allowing co-counsel to interview the co-defendant regarding the subject matter of the criminal representation while both Hernandez's and

Brisbois's cases remained active;" (4) failing to object to the seating of a substitute juror, and (5) "lack of general competence." Appellant's Opening Br. at 32. Brisbois does not, however, present any argument related to any of these alleged errors.

Because Brisbois fails to provide any arguments on these claims of ineffective assistance of counsel, the issues are inadequately briefed. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We decline to reach these ineffective assistance of counsel claims.

## V. CUMULATIVE ERROR

Finally, Brisbois argues that due to the trial court's errors, the cumulative error doctrine applies and her conviction must be reversed. We disagree and hold that because there was no error, the cumulative error doctrine does not apply.

Cumulative error applies when numerous errors deny the defendant his or her right to a fair trial, "even if each error standing alone would be harmless." *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010). Absent error, the cumulative error doctrine does not apply. *State v. Clark*, 187 Wn.2d 641, 655, 389 P.3d 462 (2017). Because there was no error, the cumulative error doctrine does not apply.

## CONCLUSION

We hold that the evidence was sufficient to support Brisbois's conviction, the trial court did not abuse its discretion by permitting the State to amend the information, and the jury instructions did not contribute to inconsistent verdicts. We further hold that Brisbois did not receive ineffective assistance of counsel. Accordingly, because there was no error, we hold that the cumulative error doctrine does not apply. We affirm Brisbois's conviction.

No. 54091-6-II

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, J._
SUTTON, J.

We concur:

_Lee, C.J._
LEE, C.J.

_Maxa, J._
MAXA, J.